**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHARLES B. GLASSTETTER, et al.,

      Plaintiffs,

v.                                 Case No. 16-11412

INTERNATIONAL UNION, et al.,

      Defendants.

_____/

**OPINION AND ORDER GRANTING DISMISSAL**

Pending before the court is Defendants' Motion to Dismiss both counts of Plaintiffs' Complaint. (Dkt. #14.) Defendant General Motors, LLC, ("GM") did not join in the motion but has filed its Answer. (Dkt. #13.) Defendants International Union United Automobile, Aerospace & Agricultural Implement Workers of America, Local 602; International Union United Automobile Aerospace & Agricultural Implement Workers of America, Local 598; and International Union United Automobile, Aerospace & Agricultural Implement Workers of America ("International UAW") (collectively, "Union Defendants") have filed the instant motion but have not yet filed an Answer. Plaintiffs were also involved in a separate companion case, though their claims against GM were dismissed and the court later entered summary judgment against them on their claims against Union Defendants. *Kosa v. Int'l UAW*, 2013 U.S. Dist. LEXIS 176611, *24 (E.D. Mich. Dec. 17, 2013); *Kosa v. Int'l UAW*, 2015 U.S. Dist. LEXIS 134544, *35 (E.D. Mich. Oct 2, 2015). Plaintiffs have filed a response, (Dkt. #17), and Defendants have filed a reply, (Dkt. #19).  After reviewing the briefs, the court concludes that a hearing is

unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the court will dismiss Plaintiffs' claims against Union Defendants.

## I. BACKGROUND

Plaintiffs are nine former employees of Automotive Component Carrier, Inc., ("ACC"), and are current employees of GM following the latter's acquisition of ACC. (Dkt. #1.) They allege that GM sent them letters offering jobs which stated that "[f]ailure to report for work . . . may result in the termination of your seniority in accordance with the provisions of Paragraphs 64(c) and 64(d) of the UAW-GM National Agreement." (*See* Dkt. #17-2.) GM hired them, seemingly granting seniority dates that reflected their original date of hire with ACC per the 1993 GM-UAW Collective Bargaining Agreement ("CBA") and other agreements. (Dkt. #1.) On October 1, 2015—just one day before now-retired Judge Duggan issued his summary judgment opinion in *Kosa*—GM issued a seniority list for the first time indicating seniority status that reflected their later dates of hire with GM. *Id.* Benefits such as eligibility for pensions or job placements are affected by an employee's seniority date. *Id.* Defendants contend that the proper seniority dates under the terms of their agreements with Plaintiffs had always been their date of hire with GM, not their earlier date of hire with ACC, and that GM records had reflected the wrong date due to errors which were corrected with the issuance of the seniority list in October of 2015. (Dkt. #14.)

It is with this backdrop that Plaintiffs pursue fair representation claims against Defendants under both Section 301 of the Labor and Management Relations Act, 29 U.S.C. § 185 *et seq.*, and Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159 *et seq.* (Dkt. #1.)

2

When Plaintiffs informed their union leaders of what they took to be GM's misdeeds in an effort to pursue the unions' grievance process, the leaders refused to file grievances on Plaintiffs' behalf in retribution for their participation in the earlier *Kosa* suit. *Id.* Members of the union told Plaintiffs that International UAW had instructed them not to process Plaintiffs' grievances. *Id.* When they sought to appeal these denials to higher echelons within the union, they received a letter on UAW letterhead stating that "there are not any provisions within the UAW International Constitution to appeal a representative's decision to not write a grievance and therefore the local union is unable to process the request." (Dkt. #17-2.) Defendants do not, in their briefing or in the answer filed by GM, dispute the allegations regarding the conduct of the Union Defendants.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Specific facts are not necessary; the statement need only 'give

3

the defendant fair notice of what the . . . claim is and the grounds upon which it rests'"
*Id.* (quoting *Twombly*, 550 U.S. at 555).

However, to survive a motion to dismiss, a complaint must provide sufficient facts
to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The
plausibility standard is not akin to a "probability requirement,' but it asks for more than a
sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing
*Twombly*, 550 U.S. at 555.) Additionally, on a motion to dismiss, a court is usually
limited to the complaint and attached exhibits, but it may also consider "public records,
items appearing in the record of the case, and exhibits attached to the defendant's
motion to dismiss so long as they are referred to in the complaint and are central to the
claims contained therein." *Erie County v. Morton Salt, Inc.*, 702 F.3d 860, 863 (6th Cir.
2012) (quoting *Bassett v. Nat'l Coll. Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008)).

### III. DISCUSSION

Defendants argue that Plaintiffs' claims are barred by the doctrine of issue
preclusion on the theory that they have already been adjudicated when the court issued
its opinions in *Kosa*. (Dkt. #14.) They also argue that: 1) Plaintiffs' hybrid claims fail
because they do not adequately allege that GM violated any collective bargaining
agreement; 2) Plaintiffs' hybrid claims fail because they do not adequately allege that
they satisfied the exhaustion requirement; and 3) Plaintiffs' separate count for fair

4

representation is identical to its hybrid claim and should be dismissed for the same reasons.

Plaintiffs respond that issue preclusion does not apply as they could not have actually litigated these claims in *Kosa* due to the late date of their discovery. (Dkt. #17.) They also argue that: 1) GM violated the terms of Section 64 of the 1993 UAW National Agreement by changing their seniority dates; 2) that futility has excused their failure to exhaust union remedies; and 3) Union Defendants' refusal to file grievances on their behalf was discriminatory, arbitrary, or in bad faith. *Id.*

### A. Failure to Exhaust Union Remedies

As a prerequisite to success on their Section 301 claims, Plaintiffs must satisfy the exhaustion requirement. It is undisputed that Plaintiffs failed to exhaust their union remedies, so the only question is whether exhaustion was excused. Three factors govern a court's discretion in whether to require exhaustion of internal union procedures:

> first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Clayton v. Int'l Union*, 451 U.S. 679, 689 (1981). The Court in *Clayton* went on to explain that if "any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust." *Id.* Here, the first two factors clearly weigh in favor of excusing the exhaustion requirement in light of the hostility and lack of appeals

5

procedure that Plaintiffs have alleged. Accordingly, the exhaustion requirement is excused.

### B. Issue Preclusion

Before his retirement, Judge Duggan decided a motion to dismiss in a companion case, *Kosa v. Int'l UAW*, which dismissed GM on the basis that Plaintiffs had failed to show that GM had breached any agreement by failing to hire them. 2013 U.S. Dist. LEXIS 176611, *27. Later in *Kosa*, Judge Duggan granted a motion for summary judgment against Plaintiffs in favor of Union Defendants. 2015 U.S. Dist. LEXIS 134544, *35. Part of the court's holding included a determination that the 2004 Contract for Transportation Services did not require GM to hire "Yellow Dot" plaintiffs, a portion of whom constitute the Plaintiffs in the instant case. Under Defendants' view, that holding has preclusive effect and bars Plaintiffs from relying on any provision of that agreement in the instant suit. (Dkt. #14.) Plaintiffs' complaint references the agreement as granting them "transfer rights to GM" and, in conjunction with a 2009 Special Attrition Plan, memorializing a "promise" that "each plaintiff was allowed to transfer to a GM plant" with seniority "as of the date he was hired by ACC[.]" (Dkt. #1.)

Defendants' argument fails for two reasons. First, Judge Duggan's opinions in *Kosa* cannot be read as broadly as Defendants would like. When the court dismissed Plaintiffs' Section 301 claims against GM, it did so as to their allegations that GM had failed to adjust the status of one member when others had retired and "not inform[ed] Plaintiffs of flow-back rights or offer[ed] them jobs when ACC's viability was threatened." 2013 U.S. Dist. LEXIS 176611, *25. The instant case centers on what Plaintiffs allege is GM's unjustified downward adjustment of their seniority dates. (Dkt. #1.) These

6

constitute completely separate theories both factually and as to the relevant contractual obligations.

In its subsequent opinion granting summary judgment as to fair representation claims against Union Defendants, the court indicated that "the 2004 Contract for Transportation Services offered the possibility of something that appears to be similar to flow back" for Plaintiffs and "requires GM to *either* offer employment to non-retiring [Plaintiffs], *or* continue subsidizing the wages and benefits of non-retiring [Plaintiffs] until they have returned to GM, retired, or converted[.]" *Kosa*, 2015 U.S. Dist. LEXIS 134544, *16 (emphasis in original). The court did *not* hold that the agreement was somehow unenforceable generally. For example, GM would not have been free to discontinue its subsidies prematurely and also refuse to hire Plaintiffs. The fact that GM had a choice of whether to hire Plaintiffs or continue to subsidize their employment at ACC is not inconsistent with an allegation that, once GM made its choice, it was obligated to do so according to the terms of the applicable agreements.

Additionally, Defendants' argument fails because nothing suggests that the question of Plaintiffs' seniority was "actually litigated" in *Kosa*. *See Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrecoverable Trust Dated June 27, 2002*, 410 F.3d 304, 310 (6th Cir. 2005) (discussing the requirements of issue preclusion under Michigan law). The contention that Plaintiffs should have brought these claims in the earlier case is belied by the fact that they could have discovered that GM had changed their seniority dates only one day before the court granted summary judgment in *Kosa*. Plaintiffs cannot be said to have had a meaningful opportunity to

7

bring these claims in *Kosa* before they were dismissed. Accordingly, issue preclusion

does not bar Plaintiffs' claims.

### C. GM's Violation of the Collective Bargaining Agreement

A stronger case for issue preclusion exists as to whether GM breached any

agreement relevant to Plaintiffs' Section 301 claims, however. In his opinion granting

dismissal in *Kosa*, Judge Duggan noted:

> A § 301 claim cannot be premised on a breach of any contract. Instead the
> statute confers jurisdiction to hear a suit for breach of only a contract between an
> employer and a labor organization (such as a collective bargaining agreement) or
> between two labor organizations.

2013 U.S. Dist. LEXIS 176611, *24. Here Plaintiffs reference the 2004 Contract for

Transportation Services to provide evidence for their allegation that GM breached a

collective bargaining agreement. (Dkt. #1.) This is an agreement between GM and ACC,

(Dkt. #14-4), and since neither party is a labor organization, that agreement cannot

supply the basis for the Section 301 claims. However, Plaintiffs aver that they do not

rely upon this agreement for their seniority claim but merely included it in the complaint

as further evidence of GM's seniority policy. (Dkt. #17.) The same defect is not present

for the other agreements[1] discussed in the complaint. (Dkts. #14-3, 14-5, 14-8.)

Therefore, dismissal on this ground is not warranted.

Defendants argue that Plaintiffs' complaint should be dismissed because it does

not identify the contract language which they allege GM breached. However, the

complaint does cite to specific paragraphs or documents within the agreements, (Dkt.

---

[1]These are the 1993 GM-UAW National Agreement, the 2009 Special Attrition
Plan, and the 2011 Special Hiring Opportunity Agreement ("SEPO").

8

#1), and in their briefs Defendants admit as much with references to the complaint citing "various contracts and agreements" and "provisions." (Dkt. #14.) Defendants' cited case law does not support the proposition that a complaint must specifically include contract language as opposed to references to pertinent provisions. *See, e.g., Young v. Int'l Union*, 148 F.Supp.3d 602, 616 (E.D. Mich. 2015) ("As set forth in the analysis below, Plaintiffs do not identify specific contract provisions that support their assertions . . .").

At the same time, Plaintiffs cannot survive dismissal by pointing to the language of offer letters warning that failure to respond might result in loss of seniority or the fact that GM treated them as if they had retained their seniority, because these are not contracts involving a labor organization and therefore cannot support a claim under Section 301. *See* 29 U.S.C. § 185(a). ("Suits for violation of contracts between an employer and a labor organization . . ."). Plaintiffs assert that they rely upon the 1993 GM-UAW Agreement to form the basis of their Section 301 claims. They argue that Section 64 of this agreement supplies the exclusive means by which Plaintiffs could break seniority, and that no Plaintiff has done so. *Id.* Though Plaintiffs were never GM employees until they were hired from ACC in 2012, they contend that their ACC seniority should follow them to GM as Document 91 of the 1993 GM-UAW National Agreement indicates that GM agreed to have ACC assume the terms of the agreement. (Dkt. #14-3.) Plaintiffs also reference other documents generally as evidence that GM seniority existed for employees of ACC pursuant to this agreement.

Defendants argue that this agreement between GM and the labor union had been replaced or expired by the time any of the Plaintiffs became employees of GM in

2012.[2] This contention is supported by the subsequent agreements at issue. In particular, Defendants point to the language of Appendix A of the 2011 GM-UAW National Agreement, which Plaintiffs claim requires "unbroken GM seniority" as a prerequisite for participation in the rehiring scheme, (Dkt. #14-7). However, it also states that voluntary participants must "terminate seniority at their current location." *Id.* Plaintiffs' complaint references the 2011 SEPO under which they made their applications for employment at GM. This document itself, which references prior agreements and Memoranda of Understanding that would have otherwise governed benefits for employees of ACC, states that 2011 GM-UAW National Agreement–not the 1993 GM-UAW National Agreement relied upon by Plaintiffs–would govern offers of employment to GM, and indicates that "[v]olunteers will be provided job offers in [ACC] seniority order and non-volunteers will be provided job offers in inverse [ACC] seniority order. Eligible individuals returning to GM [w]ill acquire GM seniority on the date of hire at the new location." (Dkt. #14-8.) Plaintiffs' complaint also references the 2009 Special Attrition Plan, which states that Plaintiffs "will be given an opportunity to make application to be considered for employment at GM based upon their longest unbroken seniority at ACC." (Dkt. #14-6.)

Read together, these provisions reflect a scheme whereby ACC employees would be offered jobs at GM according to their ACC seniority but would not retain that seniority. Instead, they would obtain GM seniority for the first time on their date of hire.

---

[2]Defendants state that the 1993 GM-UAW National Agreement expired on September 16, 1996, but the court is unable to evaluate this claim as neither party attached a full copy of the agreement to their briefs.

Plaintiffs have not identified any contractual provision of agreements in force at the time of their hire to GM in 2012 which plainly contradicts this reading, presumably because it does not exist. Because these employees obtained GM seniority on their date of hire they were not "probationary" employees, but it does not follow that they therefore retained their ACC seniority as Plaintiffs argue. Plaintiffs simply have not made a plausible case that GM breached any relevant agreement. Plaintiffs may not reach into the distant past to revive provisions of inapplicable collective bargaining agreements to support their claim. Therefore, Plaintiffs have not pled sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Plaintiffs' claims against Union Defendants are therefore doomed even though their allegations likely support allegations of bad fath and an arbitrary departure from the duty of fair representation. *See Vencl v. Int'l Union of Operating Engineers, Local 18*, 137 F.3d 420, 426 (6th Cir. 1998) (finding arbitrariness where the union filed a grievance one day late resulting in termination by the arbitrator and the unions' only excuse was that its business representative had gone on vacation). Without a basis for showing breach by GM under Section 301, Plaintiffs cannot succeed on any hybrid Section 301 claims against Union Defendants either. As Judge Duggan observed in his summary judgment opinion in *Kosa*:

> to prevail on a hybrid § 301 claim, a plaintiff must show *both* that the employer breached the collective bargaining agreement *and* that the union breached its duty of fair representation; failure to demonstrate either is fatal to a hybrid § 301 claim.

2015 U.S. Dist. LEXIS 134544, *24 (citations omitted) (emphasis in original). Since Plaintiffs have failed to allege sufficient facts to support one of the two elements

11

necessary to a hybrid Section 301 claim, specifically that GM breached a collective

bargaining agreement, their hybrid Section 301 claims against the Union Defendants

are deficient and will be dismissed.

### D. Separate Fair Representation Claim

Defendants argue that Count II of Plaintiffs' Complaint alleging a failure of fair

representation under Section 9(a) should be dismissed because it is really a hybrid

Section 301 action dressed up as a separate cause of action. While it is true that

Plaintiffs cannot merely cast "their duty of fair representation claims as independent

causes of action in what are, in substance, hybrid 301 claims[,]" it is also true that

"Section 9(a), in conjunction with 28 U.S.C. § 1337, creates a jurisdictional basis for

actions for breach of the duty of fair representation independent of Section 301." *Pratt v.

UAW, Local 1435*, 939 F.2d 385, 388-89 (6th Cir. 1991) (citation omitted). In *Pratt*, the

court held that a Plaintiff who had not alleged a breach of a collective bargaining

agreement by his employer, had not named the employer as a defendant, and had not

filed a grievance, was able to pursue a separate Section 9(a) claim. *Id.* at 389.

By contrast, in *White v. Anchor Motor Freight*, the plaintiff pursued a

"quintessentially hybrid 301 claim" because he had made a "colorable allegation" that

the employer had breached a collective bargaining agreement by firing the employee

following a major accident and that the union had failed to fulfill its duty of fair

representation in processing his grievance. 899 F.2d 555, 560-62 (6th Cir. 1990). The

court compared cases where "the principal issue joined by the controversy arose from

circumstances rooted in the relationship existing between a union member and his

union," which the court reasoned could support a Section 9(a) claim, with those rooted

12

"in the relationship existing between a union member, his union, and his employer as forged through a collective bargaining agreement." *Id.* at 560-561.

In the instant case, Plaintiffs brought their claims against both the employer and the union under a theory that the employer had breached the collective bargaining agreement by unjustifiably modifying Plaintiffs' seniority dates and that when they attempted to file grievances, the union declined to process them. Though ultimately unsuccessful for the reasons discussed above, Plaintiffs here have alleged a "colorable allegation" of a breach of the collective bargaining agreement by the employer which centers on a relationship between "a union member, the union and his employer." Plaintiffs' purported Section 9(a) claims are similarly quintessentially hybrid Section 301 claims. *See also Young*, 148 F.Supp.3d at 619-21 (finding that a Section 9(a) claim instead stated a quintessential hybrid Section 301 claim where plaintiffs "brought their claims against the employer and the union[,] . . . had previously filed a grievance under CBA[,] and the complaint allege[d] breaches of the CBA by the employer" even though the union contributed to delays in processing the grievance). This court is not free to exercise jurisdiction under 28 U.S.C. § 1337 given the essential nature of Plaintiffs' claims. Therefore, Plaintiffs' Section 9(a) claims will be dismissed.

### IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' Motion to Dismiss (Dkt. #14) is GRANTED. A separate judgment will issue.

   s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

13

Dated:  September 29, 2016


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 29, 2016, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

C:\Users\wagner\AppData\Local\Temp\notesDF63F8\16-11412.GLASSTETTER.dismiss.bss.wpd